UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

      v.                                                          **MEMORANDUM & ORDER**
                                                            20-CR-120-1 (WFK)

NATHANIEL LLOYD MCKENZIE,

                       Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 15, 2020, Defendant Nathaniel L. McKenzie ("Defendant") pled guilty to one count of making false statements in an application for a passport in violation of 18 U.S.C. § 1542. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 16 months of incarceration, 1 year of supervised release with special conditions, and a $100.00 special assessment fine.

## BACKGROUND

On December 20, 2019, the United States ("Government") filed a Complaint charging Defendant with willfully and knowingly making one or more false statements in an application for a United States passport in violation of 18 U.S.C. § 1542. Compl. ¶ 1, ECF No. 1. On September 15, 2020, the Government filed an Information charging Defendant with the same violation. Information ¶ 1, ECF No. 26. That same day, Defendant pled guilty to the sole count of the Information. *See* Plea Agreement ¶ 1, ECF No. 28. The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

**II. Analysis**

**A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. <u>Family and Personal Background</u>

Defendant was born on December 26, 1976 in Kingston, Jamaica, to the non-marital union of Clarence McKenzie and Francella Kepple. *See* Presentence Investigation Report ("PSR") ¶ 34, ECF No. 36. Defendant currently has no legal status in the United States. *Id.* ¶ 39. He has one sibling, who resides in Canada. *Id.* ¶ 35. Defendant also has four paternal half-siblings, and one maternal half-sibling. *Id.* ¶¶ 36-37. In 1988, Defendant's father reportedly

passed away after a blood vessel burst in his head. *Id.* ¶ 34. His mother continues to reside in Kingston, Jamaica, and works as a retired domestic helper. *Id.* Defendant's mother and siblings are aware of Defendant's arrest and maintain their support for him. *Id.* ¶¶ 34-37.

Defendant claims he was reared by his parents under lower-income, but loving circumstances. *Id.* ¶ 38. Since he was a child, Defendant reported suffering from asthma. *Id.* ¶ 49. Defendant's parents separated when he was five years old. *Id.* ¶ 38. Defendant lived with his father until his father's death, after which he returned to his mother's home. *Id.* Defendant reports his formulative years were devoid of abuse. *Id.*

Defendant reported completing high school in Jamaica. *Id.* ¶ 52. When Defendant was around 22 years old, he moved to London, where he lived for an additional four years. *Id.* ¶ 39. During this time, Defendant was involved in a relationship with Cina Oparaocha, with whom he fathered a son, Jamal McKenzie. *Id.* ¶¶ 39-40. Ms. Oparaocha continues to reside in London, where she works as a payroll agent and enjoys good health. *Id.* ¶ 40. Defendant reported he has always provided financial support for Ms. Oparaocha when he was able to. *Id.* Both Ms. Oparaocha and his son are aware of Defendant's arrest and remain supportive of him. *Id.*

From 2000 to 2004, Defendant was involved in a relationship with Dawn Gordon, who is the mother of his second child, Nyhila McKenzie. *Id.* ¶¶ 39, 41. Defendant eventually separated from Ms. Gordon when he relocated to Jamaica. *Id.* ¶ 41. He was then involved in a romantic relationship with Boricia Brown, with whom he shares a daughter, Bethany McKenzie. *Id.* ¶ 42. Both Ms. Brown and Ms. Bethany McKenzie currently reside in Atlanta, Georgia. *Id.* Ms. Gordon, Ms. Nyhila McKenzie, Ms. Brown, and Ms. Bethany McKenzie are aware of Defendant's arrest and remain supportive of him. *Id.* ¶¶ 39-42.

Sometime in 2004, Defendant entered the United States. That same year, he married Ms.

3

Keona Spaulding and fathered a son, Mr. Zion McKenzie. *Id.* ¶ 43. The two have been separated for some time, and Defendant states he plans to file for divorce. *Id.* Defendant nevertheless reports he maintains a close relationship with his estranged wife to co-parent their son. *Id.* Both Ms. Spaulding and her son currently reside in Atlanta, Georgia and remain supportive of Defendant. *Id.*

From 2007 to 2009, Defendant was involved in a relationship with Ms. Carla Anderson, with whom he shares a son, Mr. Zidane McKenzie, who resides in Brooklyn, New York. *Id.* ¶ 44. Ms. Anderson maintains Defendant is a kind and attentive father, who has provided financial support for their son. *Id.*

After 2009, Defendant was involved in a relationship with Ms. Nascia Williams. *Id.* ¶ 45. The two share a son, Nathan McKenzie, who is 11 years old. *Id.* ¶ 45. Ms. Williams describes Defendant as a good person and father. *Id.*

2. <u>Employment History</u>

In approximately 1997, Defendant obtained an automotive mechanic certificate in Jamaica and began working to assist his mother financially. *Id.* ¶ 52. After he entered the United States, Defendant worked for several mechanics and as a barber. *Id.* ¶ 55. He then worked at an automotive repair business in Jamaica, Queens, for which he earned between $20,000.00 and $30,000.00 per year. *Id.* ¶ 54. Defendant has reportedly filed income tax returns with the Internal Revenue Service and the New York State Department of Taxation and Finance for all the years he was required to file. *Id.* ¶ 56.

3. <u>Criminal History</u>

During his time in the United States, Defendant assumed various false identities to evade immigration and law enforcement authorities and fraudulently obtain United States passports.

*Id.* ¶ 7. For example, in 2007, Defendant was arrested in Maryland for criminal possession of marijuana. *Id.* ¶¶ 8, 29. At the time, he was using the alias "Delroy Junior Brown." *Id.* ¶ 8. After his arrest, Defendant was placed in immigration proceedings and was ordered removed on April 3, 2008. *Id.* However, Defendant assumed a new identity and did not self-deport until May 24, 2013, before returning to the United States on an unknown date. *Id.* A warrant was issued for Defendant's arrest for his marijuana charge, which remains pending although it is only extraditable from states adjacent to Maryland. *Id.*

Defendant also fraudulently applied for, and received, a United States passport in June 2011 using the name, "Rayshon Davis." *Id.* ¶ 4. The application included Defendant's photograph and a birth certificate issued by the state of New York, as well as a New York State driver's license under the name of Rayshon Davis. *Id.* Defendant also applied for a passport renewal by mail on May 2, 2011 under the name "Delroy Junior Brown." *Id.* ¶ 5. However, because of the Maryland arrest warrant, Defendant's application was denied. *Id.*

In 2019, Defendant was arrested in California following his flight from a vehicle stop. *Id* ¶ 30. During a subsequent search of his vehicle, officers recovered methamphetamines. *Id.* At the time, he was using the alias, "John Kendall." *Id.* After his release from custody, he returned to New York and again assumed a new identity. A non-extraditable warrant remains outstanding for Defendant's arrest for his 2019 charge.

On December 20, 2019, Defendant was arrested at John F. Kennedy International Airport after being recognized by facial recognition software. *Id.* ¶ 9. At the time, Defendant was using a passport with the alias "Rasheem Terrell Evans." *Id.* ¶ 10. He was also found to be in possession of a fraudulent birth certificate, Social Security Card, and other documents under that name. *Id.* Defendant was eventually transferred from state custody to the custody of

5

Immigration and Customs Enforcement. *Id.* On January 16, 2020, Defendant was arrested on a federal complaint charging him with passport fraud in the instant case.

4. <u>Medical and Mental Health</u>

At some point in his 20s, Defendant was diagnosed with high blood pressure. *Id.* ¶ 49. He claims to suffer from sporadic heart palpitations, for which he is prescribed medication. *Id.* Aside from these conditions, Defendant did not report suffering from any other physical ailments. *Id.* ¶ 49. Defendant also did not report any history of significant mental illness and denied he had any history of substance abuse or gambling tendencies. *Id.* ¶¶ 50-51.

B. **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, including his numerous attempts to flee from immigration and law enforcement by assuming false identities. The Court's sentencing will deter others from engaging in similar acts and justly punishes Defendant for his offense.

C. **The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of making false statements in an application for a

6

passport in violation of 18 U.S.C. § 1542.  For this offense, Defendant faces a maximum term of imprisonment of 10 years, a term of supervised release of not more than 3 years, a term of probation of not less than one nor more than 5 years, a maximum fine of $250,000.00, and a mandatory special assessment of $100.00.  8 U.S.C. § 1326(b)(2); 18 U.S.C. §§ 3583(b)(2), 3561(c)(1), 3571(b).

> **D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable Guideline for a violation of 18 U.S.C. § 1542 is § 2L2.2(a) of the United States Sentencing Commission, Guidelines Manual ("USSG").  The base offense level for this violation is 8.  USSG § 2L2.2(a).  Because Defendant is an unlawful alien who has been deported on an occasion prior to the instant offense, his offense level is increased by 2 levels under USSG § 2L2.2(b)(1).  A further increase of 4 levels is warranted because Defendant fraudulently obtained a United States passport under USSG § 2L2.2(b)(3)(A).  But because Defendant has clearly demonstrated acceptance of responsibility for the offense by pleading guilty, his offense level is decreased by 2 levels, to a total offense level of 12.  *See* USSG § 3E1.1(a).

The parties agree Defendant's criminal history category is I.  For an offense level of 12 and a criminal history category of I, the Sentencing Guidelines suggest a term of imprisonment of 10-16 months.  *See* USSG Ch. 5, Pt. A.  As an alternative, USSG § 5C1.1(d)(2) authorizes the Court to impose a term of imprisonment of 5 months followed by a term of supervised release with a special condition requiring 5 months community confinement or home detention.

7

Defendant may also be required to pay the costs incurred by the United States in prosecuting Defendant. USSG § 5E1.5.

Defense counsel urges the Court to impose a sentence of time served with a period of supervised release, citing Defendant's prompt acceptance of responsibility by pleading guilty, his meaningful assistance to law enforcement, compliance with location monitoring and curfew requirements, commitment to putting this case and his previous crimes behind him, and the additional detention Defendant may be subject to if he is removed from the United States. Def. Mem. at 3-5, ECF No. 54. In support of its request for time served, defense counsel argues that, if the Court were to impose the Guidelines' alternative sentencing recommendation under USSG § 5C1.1(d)(2), Defendant has already served a sentence that approximates this sentencing range. *Id.* at 4.

The Government acknowledges Defendant's prompt acceptance of responsibility and his assistance to law enforcement and states that it will not object to a below-guidelines sentence. Gov. Mem. at 5, ECF No. 56.

Probation requests a sentence of 16 months incarceration and 2 years of supervised release with special conditions, including for Defendant to not re-enter the United States illegally and to cooperate with immigration authorities. Probation Mem. at 1, ECF No. 36-1. Probation states that Defendant's travel from Jamaica to the United States on at least 50 instances using fraudulently obtained passports is an aggravating factor. *Id*. Probation also argues Defendant's strong familial ties to the United States require the imposition of a term of supervised release to deter him from illegally re-entering the United States. *Id*. at 2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy

8

statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply here.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.  The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). This factor is not relevant to Defendant's sentence.

## CONCLUSION

The Court finds that a sentence of 16 months of incarceration, followed by 1 year of supervised release, and a $100.00 special assessment is appropriate. The Court also imposes the following conditions of supervised release: (1) if removed, Defendant may not re-enter the United States illegally; and (2) Defendant shall cooperate with and abide by all instructions of immigration authorities. This sentence is consistent with and is sufficient but no greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 11, 2022
      Brooklyn, New York